I find myself unable to accept the absolutism with which the majority opinion treats the "Mother Hubbard" clause in the lease from Cain to Johnston.
As I understand the facts, Lot 16 was a well-defined 10-acre tract when Cain acquired it in 1946. When he leased the north half in 1975, he also owned (or claimed to own) an additional 1-acre tract adjacent to the 5-acre tract leased to Johnston. That 1-acre tract, which he later acquired through a bill to quiet title, had nothing to do with clearing title to any portion of Lot 16. That is to say, Cain's litigation to acquire title to the additional 1-acre tract was not intended as "title curative" with respect to Johnston's north half of Lot 16.
I do not disagree with the authorities cited by the majority that give the "Mother Hubbard" clause a restricted application. This is the general rule, and I think it is a sound one. To apply the "cover all" language to expand the lease in the instant case to include six acres within the leased north half of Lot 16, however, is, in my opinion, a misapplication of the rule. The rule of restricted application gives the "cover all" language a field of operation in those narrow circumstances compatible with the obvious intention of the parties; and it avoids the necessity for declaring the clause inoperative as contravening public policy if given a literal interpretation. For a general discussion of "Mother Hubbard" clauses, see R. Hemingway, The Law of Oil and Gas, § 7.7 (1983).
Two examples — one at each end of the spectrum — will suffice to illustrate my point. Example No. 1 (restricted application): Suppose the north edge of the north half of Lot 16 was represented by Cain to Johnston as being bounded by a public road and a physical inspection of the property so indicated. In fact, however, a subsequent survey shows that a metes and bounds description containing 5 acres (exactly as shown in the conveying clause) leaves a *Page 244 
100-foot strip between the north edge of the property and the south edge of the public right-of-way. Cain, having possessed, occupied, and claimed the 100-foot strip, then proceeds to clear title. Clearly, the "Mother Hubbard" clause gives Johnston the entire tract — the 5 acres described in the lease plus the 100-foot strip.
Example 2 (literal interpretation): Assume, for the purpose of this example, that Cain's lease of the south half of Lot 16 to Dunn in 1974 also contained the "Mother Hubbard" clause. A literal interpretation of this "cover all" language would have conveyed a lease interest to Dunn in the entire 10-acre tract; for, to be sure, the north half of Lot 16 lies "contiguous or adjacent to or adjoining the land above described." Additionally, the 1-acre tract would also go to Dunn, because it too was "claimed by lessor by . . . prescription." So, Dunn would have acquired, through his 5-acre (south half of Lot 16) lease in 1974, the entire 11 acres; and Johnston would have acquired nothing by his 1975 lease.
The courts, then, for good reason, have given the "Mother Hubbard" clause a restricted, rather than a literal, application. Yet, the majority in the instant case, by declaring summarily and as a matter of law (thus, foreclosing parol evidence as to the intention of the parties) that Johnston's lease included the after-acquired acreage, gives the "Mother Hubbard" clause a literal, rather than a restricted, application.
By way of conclusion, I feel constrained to comment upon the majority's reference to the sentence in the lease following the "Mother Hubbard" clause. That sentence begins, "For the purpose of determining the amount of any bonus or other payment hereunder. . . ." In spite of that explicit "purpose," the majority uses the phrase "said land shall be deemed to contain 5 acres whether actually containing more or less" as part of its rationale to justify the inclusion of the additional acre within the terms of the lease. By clear and unmistakable language, it is only for the determination of the amount of payment that the parties agree upon specific acreage (here 5 acres) and not for the purpose of extending the description contained in the conveying clause. Even if the "5 acres more or less" appeared in the legal description of the lease, the property conveyed would not extend beyond the acreage contained in the described north half of Lot 16. Apart from our disagreement with respect to the majority's application of the "Mother Hubbard" clause, the majority opinion is clearly off base in its reliance on the determination-of-payment language in the lease.
FAULKNER, J., concurs.